E will sit first, and there are two cases before panel E, one of which will be taken early, that case for the record is Stovall v. USPS, second case is one submitted on the record, Jones v. DVA, and that number is 2007-7229 At the end of the hearing for the Stovall case, we will reconstitute the panel and proceed with two other cases as an E-plus panel First case to be heard is Stovall v. USPS. Mr. Onge, you have 5 minutes for rebuttal and 5 minutes for your case in chief. You may proceed. Good morning, members of the court, counsel. For the record, my name is Jose Luis Onge, and I represent Petitioner Mr. Gregory Stovall. For the record, I made it clear in my reply brief that we are not raising a discrimination issue on this petition. It was only intended as a background. Having said that, my contention has been in this brief that my client was fit for duty and that the evidence at various stages throughout the process established that. But isn't that a problem for you given our standard of review? I mean, isn't your dispute here just over how the administrative judge weighed the evidence? And is that problematic at this level? It can be. However, substantial evidence is a form of weight of evidence. You have to look at the evidence and say, if you believe that evidence, once you address my point, it's still substantial evidence. So what we've got here in terms of evidence are two different reports. And the question is, which one should we credit more than the other? Not necessarily. That is part of it. But you have the testimony of the two doctors, and you have the cross-examination of both doctors, and you have what I consider several instances which I have cited and I have divided it in terms that questions Dr. Berman's basis. There was history there. He denied things that he should have not denied that the record clearly states. For example, he denied that he felt intimidated by my client, even though the record is clear that he said that. He denied, he tried to squiggle out of the fact that he stated that having a trusting relationship with a patient would be more important when he had said that before. But isn't that really a weight of the evidence? You're asking us to re-weigh the evidence. It was done below. We can't do that under our standard of review. But you have to determine whether that evidence, you have to look at the record. And if you look at the record, is that testimony, after you look at it, sufficient to establish that my client was unfit for delivery? Now, let me take away the testimony that I'm using to challenge his credibility. Let's put that aside. Let's now look at the fact that his own diagnosis was equivocal. Let's look at the fact that he testified that my client could work. I'm not challenging that. I'm not asking you to question whether that's true or not. And all he needed was treatment. What about the fact that he testified that if he did not consider, if he only considered, okay, the incidence of misconduct alleging it's my client that took place in the summer months of 2003, that that would have not been sufficient for him to find him not fit for duty. Well, is your view, though, I mean, we've got dueling experts here. Let's assume Dr. Berman, he was the government's expert, right? Let's assume he was the only expert here and you didn't have your own physician, Dr. Hull. You're not contending that that testimony in and of itself wouldn't be sufficient to sustain the unfitness? I actually am. I may sound crazy, but I am, for the following reasons. Well, you better hope it doesn't sound crazy. Well, I understand. I'm basing that remark based on the tone and the nature of your question. But think about this. If he's testifying, if he's saying, on their oath, by the way, that my client could work with treatment, well, then he is fit for duty. He didn't say anything else. He admitted that on cross. That's number one. If he's admitting on cross, he didn't admit this on direct, but he admitted this on cross, that if you don't count everything else they wanted to throw into the process against my client, all of the history, that that would have not been sufficient for him to find him not fit for duty. And you consider the judge's ruling saying, we can't consider that. There's no issues here, and we're not going to consider that. Then his own testimony is stating that my client is fit. On the other hand, let's now add my expert's testimony, Dr. Hall. Now, Dr. Hall's problem, and the reason why the agency didn't accept his testimony, was because he did not review page by page the entire record against my client. Not because he wasn't qualified, didn't have the award certification, didn't have the experience. That was not the issue. It was only strictly because he didn't review all the documents. Well, I thought the issue, so maybe I'm mistaken or I misread it. I thought the question was whether or not Dr. Hall was aware of the various incidents and conduct of your client at the workplace, and that that would inform his judgment with respect to your client's fitness for duty. And he was, and he testified to that. He testified to that, that he did not review the whole record because he couldn't, because he works for the VA. But he also testified that because he's been treating him for a number of years, he had become familiar with most, if not all, the allegations against my client. And he said that on his letters, which I admit that they were not, they were very short. But he also further testified to that on the rolls. And the fact that he's treated him for several years, during which some of these things have been raised against my client, shows that he had familiarity with his condition. Also, I think his explanation, and now I'm getting into the credibility issue, but I don't think I could ignore that, his explanation that the diagnosis of paranoid personality disorder was not appropriate, was very credible and made sense to me. I had no knowledge of psychiatry. But he explained that for you to have that condition, that condition kind of takes over your life. It's prevalent in all aspects of your life. You just don't compartmentalize your life. And he explained how Mr. Stoll, my client, petitioner, had only documented problems at work. And I put the issues of discrimination, not to raise some affirmative defense or anything like that, I understand this court doesn't have jurisdiction, but to explain the environment where he was in. Now, Dr. Hall also was very credible in the sense that he said, I'm not saying this guy is perfect. And he used the phrase, thin skin. He has problems, but he doesn't suffer from a paranoid personality disorder. And that's why he was put in an enforced leave. He was not put in an enforced leave for the actions, because he was disciplined for each incident. So he could have not been disciplined twice. The first event, he was given a letter of warrant. The second event, he was given a seven-day suspension. The third event, he was given a 14-day suspension. Now, let me... But, Mr. Rangel, it still remains the bottom line. You're asking us to re-weigh all of the evidence and consider one expert's testimony over another's. Well, I will ask you, if that's how the court sees it, then I will... I submit to you that if you just study carefully Dr. Berman's testimony... But we can't do that. We can't weigh testimony on that basis. He's wrong. We can't just take one expert's witness over another and then say, well, we give more credibility to one over the other. That's not our function as an appellate tribunal. We don't have that ability to do that. Well, let me ask a different question. Now, you do have jurisdiction over matters of law, if the court makes a legal mistake, if the administrative judge makes a legal mistake. And I submit to you that at the moment the judge made a ruling excluding disciplinary actions or allegations before June of 2003, and after Dr. Hall took the stand on their oath and testified and established, after cross-examination, his opinion was not shaken, that my client was fit for duty, at that point, this proceeding should have ended. At that point, based on the principles developed by the Merit Systems Protection Board, once evidence that an employee is fit for duty is established, then that employee has to be returned to duty, and he wants it. Mr. Ranga, you're well into your rebuttal time. We'll restore three minutes of your rebuttal if you need it. Thank you, and I apologize for going over. Mr. Sneed? Good morning, Your Honors. The decision of the Merit Systems Protection Board should be affirmed, but the petitioner here has failed to identify any substantial legal error by the Merit Systems Protection Board. Well, let's look at that a little. I mean, he represented that your own witnesses, Dr. Hull's test—I'm sorry, it was Dr. Berman. Okay. Dr. Berman testified that with medication he would have been fit for duty? His report is more specific than that, I believe. His report was that with proper conditions within the workplace, perhaps with treatment, he could learn to conform his behavior. His report and his testimony very clearly established that he did not suffer from a psychological disease, and that he was capable of conforming his behavior if he so chose. But given his paranoia, which Dr. Berman diagnosed, he believed that, in fact, he was not capable—at that point, was not willing or capable of doing so. He had previously been considered by Dr. Berman under a fitness for duty determination several years before, and the agency at that point tried to put him in an isolated place, and that also did not work out because the individual apparently continued to roam around the facility and engage in additional confrontations. So his diagnosis was in no way—Dr. Berman's diagnosis was in no way equivocal. He diagnosed him with suffering from paranoia. Based upon that diagnosis, his opinion, as well as that of Dr. Nackley, a physician and a psychiatrist employed by the Postal Service, concluded he was not fit for duty. There is no way where either of those opinions are equivocal. But then he ultimately got put back. He was put back on duty. He was placed on enforced leave because the agency determined that he was a threat, a potential threat, to the safety of himself, others, or property of the Postal Service. And at that point, I encourage the Court to, if you were to look at anything in the record, you needn't look at conflicting testimony and weigh evidence, because, as I will tell you in a moment, I believe this Court is well familiar with precedents that it is precluded from re-weighing evidence. Dr. Berman's report, which is included in the appendix, does in fact illustrate the conundrum that the Postal Service finds itself in. Dr. Berman makes very clear in his report that there are a number of individuals in the postal facility who are alleging that the petitioner was in fact the intimidator, the threatener, and the leading cause of these confrontations. And the confrontations were not disputed. They occurred throughout the place. The petitioner, Mr. Stovall, reported both to Dr. Berman and his own doctor, Dr. Hall, that he was the victim of this large conspiracy of people within the Postal Service place. And what Dr. Berman's testimony, I believe it's at page 51 in the appendix, makes very clear is that it doesn't matter in the end of the day who is really correct about that from a medical diagnosis point of view. People who are intimidating and threatening could in fact act out in anger or in violence. Or conversely, if the petitioner's characterization of events were true, and that is that he was the victim, people suffering from paranoia do have a tendency to also, as he testified, lash out and react in anger or violence. So whether, Dr. Stovall, the petitioner's characterization of events were in fact the truth, or whether those proposed by the agency were the truth, Dr. Berman's point was… Wait a minute. I'm missing something here. Are you saying if he wasn't medically paranoid, if it's true that everyone was out to get him and that they were doing this stuff to, you know, intimidate him, is it his fault? I mean, has he put on… No, no. I'm simply trying to illustrate that Dr. Berman's point is that under either situation, there's the potential for violence within the agency. Yeah, but you're not going to put somebody on the street… No, but the agency… I'm sorry. If it was not his fault. Yeah, and those other people are intimidating him and making his workplace, you know, harassing him in the workplace. You're not going to say, well, there's the potential for violence. Yeah, anybody might lash out under that circumstance. You don't put him on the street because of that. I'm not suggesting the agency did it for that reason. I'm simply using that to illustrate what I would represent as the comprehensiveness or the soundness of Dr. Berman's analysis. The agency then proved to the satisfaction of the administrative judge that in fact the petitioner was the instigator or the threatening individual in at least three of the specific instances charged during the summer of 2003. Additionally, the agency… So what changed? What made him fit for duty? What made him go from unfit to fit? The principal difference is that in following the hearings, yet a third evaluation was conducted, this time by an independent doctor at the selection of both sides, a Dr. Rieger. Dr. Rieger's analysis is also in the report. And basically Dr. Rieger's report, which I would recommend referring the court to specifically around pages 74 and 75 of the appendix, is simply this. He concludes that in fact the petitioner does suffer from mild paranoia. Less severe than Dr. Berman concluded, but he concluded that he did suffer from mild paranoia. He also concluded that the individual had a tendency to victimize, place himself in the position of a victim, and had a tendency to anger as well. However, the significant difference was that having been on enforced leave, that is leave without pay for around 18 months, the petitioner evinced a solid intention to do his job, to avoid others, to turn a new leaf was the expression that Dr. Rieger used, and that Dr. Rieger accepted his representations in that regard, that he knew whether his fault or others, his prior conduct had led to confrontation, and that he intended to avoid that. And based on those findings, Dr. Rieger recommended that he be returned to duty. And in fact he was returned to duty at that point in November of 2005. I would refer the court quickly to the legal standards applicable here. As the court knows, the government has to show three things, that is that there is a factual basis for the conduct which was charged, secondly that the agency's action promoted the efficiency of the service, that is the nexus requirement, and thirdly that the action falls within the zone of reasonableness. As to the last two points, nexus and reasonableness, the petitioners conceded those points, and their challenge focuses principally upon factual allegations and determinations. Mr. Snead, do you agree that we have jurisdiction over this case, and that the Title VII allegations really were only an evidentiary support for the environmental aspect? Yes, I do believe the plaintiffs have in fact waived or abandoned any arguments of reprisal. They say so in their petition, in addition to Mr. Allengate's oral statements here. They say so in their reply brief, as well as in the statement of Mr. Allengate. So you waive your jurisdictional argument? So we believe that this court does have jurisdiction to reach this case under Title VII. You waive your jurisdictional argument? That would be correct, Your Honor. That is correct. We believe they were not raised, and thus have no reason to respond, but yes, we would encourage this court to reach resolution on the merits. I would lastly very quickly refer the court to a couple of cases which I know are very well familiar to this court, and sometimes people hear these quotations and citations and would characterize it as old news or an old saw, another description for those that these are well-established precedents. Among them, 5 U.S.C. 7703C, which requires that this court must affirm the factual findings below unless they are unsupported by substantial evidence. Well, if you put it in plain English, you must affirm if there is substantial evidence. And this court has defined substantial evidence as that amount of evidence needed for a reasonable person to accept the proposition asserted. And in Hanratty, this court held that it had no authority to review factual, to de novo review of the factual findings below. It's always good to use plain English, because sometimes the statutory language is not very plain, and I would recommend that attorneys use plain English when they write their briefs, too. I cannot remember the site, Your Honor, but there's a beautiful Supreme Court site to the difference between congressional English and plain English that often is very, very relevant. Lastly, Your Honor, I would recite this court to its decisions in Henry and Hanbush regarding credibility determinations, in which this court has held they are, quote, virtually unreviewable. And the standard to challenge a credibility determination was listed in Hanratty as, quote, the testimony is inherently improbable or discredited by undisputed evidence or physical fact. None of the allegations raised by Petitioner here rises to the level of demonstrating either inherent improbability in the board's findings, or that they are discredited by improbable evidence or physical fact. And for these reasons, we request the decision of the Merit Systems Protection Board be affirmed. Thank you, Mr. Schnee. Mr. Hange, you have three minutes. Mr. Schnee, I'd like just to make two points. First is that Dr. Rigger's exact language regarding Mr. Petitioner's condition is that Mr. Stoble has mild paranoid personality traits. And then right below it he says, when I examined Mr. Stoble, I could not discern a psychiatric disorder or condition. Page 74 of your handout. The last thing I'm going to ask the court to consider is, and I don't, this is probably a mixed issue of law and fact, but that is the issue of the fact that the testimony introduced and the evidence introduced by the agency consisted mostly of out-of-court, unsworn, hearsay statements. And my client took the stand and testified under oath and was subject to cross-examination. And there's case law that talks about the kind of weight that it should be given to the testimony. Again, we're getting into the weight issue. But I think that as a matter of law, that may be an issue that this court will want to look at. I explained each and every allegation levied by my client on my brief. I went through each testimony. I outlined which one was live, which one was based on unsworn written hearsay, et cetera, et cetera. So if the court wants to look at that issue, it's there. And I don't have really anything else to add. Thank you very much, Mr. Ng. The case is submitted.